ESTATE OF LEOPOLD KAFFIE, HAROLD KAFFIE, JEANETTE KAFFIE, AND SAERA KAFFIE, SOLE HEIRS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100526.    Promulgated June 27, 1941.

*Howell Ward, Esq.*, for the petitioners.
*Wilford H. Payne, Esq.*, for the respondent.

### OPINION.

SMITH: The question presented by this proceeding is the value for estate tax purposes of the decedent's one-half community interest in his one-half interest in the partnership of Kaffie Lumber & Building Co., which respondent concedes was dissolved by the death of Leopold Kaffie on September 29, 1937. In the estate tax return such value was reported to be $97,252.41, which is one-fourth of the value of the partnership assets at the date of death, as shown by the partnership books of account. The partnership books of account did not, however, show any value for good will. As we understand the record in this proceeding the respondent does not contend that this amount does not reflect the fair market value for estate tax purposes of the decedent's interest in the tangible assets of the partnership which passed to his heirs at his death. He contends, however, that the partnership had a good will which enhanced the value of the decedent's interest in the business which passed to his heirs and that the value of the interest is $171,093.35. The method of his computation of value is shown in our findings of fact. His determination is based solely upon the large earnings of the partnership in relation to invested capital for the period 1933 to 1937, inclusive.

The incidence of the estate tax is upon "the transfer of the net estate." Sec. 301 (a), Revenue Act of 1926. Section 302 of that act (as amended by section 404 of the Revenue Act of 1934—48 Stat. 754), declares in part:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated except real property situated outside the United States—

(a) To the extent of the interest therein of the decedent at the time of his death.

Regulations 80 (1937 Edition), pertaining to the estate tax imposed by the Revenue Act of 1926, as amended, provides in part as follows:

ART. 10. *Valuation of property.*—(*a*) *General.*—The value of every item of property includible in the gross estate is the *fair market value thereof* [italics ours] at the time of the decedent's death; * * * The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. * * * All relevant facts and elements of value as of the applicable valuation date should be considered in every case. * * *

\* \* \* \* \* \* \*

(*d*) *Interest in business.*—Care should be taken to arrive at an accurate valuation of any business in which the decedent was interested, whether as partner or proprietor. A fair appraisal as of the applicable valuation date should be made of all the assets of the business, tangible and intangible, including good will, and the business should be given a net value equal to the amount which a willing purchaser, whether an individual or corporation, would pay therefor to a willing seller in view of the net value of the assets and the demonstrated earning capacity. Special attention should be given to fixing an adequate figure for the value of the good will of the business in all cases in which the decedent has not agreed, for an adequate and full consideration in money or money's worth, that his interest therein shall pass at his death to his surviving partner or partners.

The respondent's determination that the fair market value of the decedent's interest in the partnership of Kaffie Lumber & Building Co. at the date of his death was $171,093.35 is presumably correct. The burden of proof of showing otherwise is upon the petitioners. In an effort to bear such burden they have presented to the Board all of the material facts with respect to the carrying on of the partnership business, its earnings, invested capital, etc.

So far as the Board has been able to determine the question presented by this proceeding is one of first impression. The Board has in many cases been requested to redetermine deficiencies in estate tax of estates of deceased persons owning shares of stock of corporations where the respondent has found that the value of the shares was in excess of cost or of the book value, due to the element of good will or other intangibles. Those cases are not, however, in point in this proceeding; for a corporation has a life independent of the life of a deceased stockholder.

Also, it seems plain that where a decedent has operated a business as sole proprietor the business might have a value in excess of the cost or book value of the tangible assets of the business at date of death. The location of the business and the name under which it was conducted might give the property to be valued a fair market value in excess of the cost or book value of the assets. In any consideration of such a case the question is the fair market value of the assets left by the decedent which are transferred to his heirs or legatees by reason of his death.

We apprehend that the same rule would apply in the case of the death of a partner in a profitable business. In Rowley on Partner-

ship (1916), it is stated at section 278.: "Partnership property includes the good will of the firm", citing *Smith* v. *Walker*, 57 Mich. 456; 22 N. W. 267; *Smith* v. *Imus*, 57 Mich. 456; 24 N. W. 830; *Spiess* v. *Rosswog*, 63 How. Pr. (N. Y.) 401; 48 N. Y. Super. Ct. 135; affd., 96 N. Y. 651. Upon the death of a partner. the surviving partner, at least under the laws of Texas, holds the assets of the dissolved partnership as trustee for the purpose of paying the debts of the partnership, winding up its affairs, and paying over to the deceased representatives their shares of the partnership assets. *Altgelt* v. *Alamo National Bank*, 98 Tex. 252; 83 S. W. 6, 9. If the partnership assets can be sold or liquidated at a price in excess of the net worth of the partnership, as shown by its books of account at the date of the death of the deceased partner, the deceased partner's representatives are entitled to receive their share of the net assets. In the proceeding at bar that would be one-fourth of the total.

It is a general rule, however, that the surviving partner may set up business for himself at the old stand without being liable for damages to the good will as a part of the firm assets. *Hutchinson* v. *May*, 187 Mass. 262; 72 N. E. 974; *Witbeck* v. *Chittenden*, 50 Mich. 426; 15 N. W. 537; *Chittenden* v. *Witbeck*, 50 Mich. 401; 15 N. W. 526; *Scudder* v. *Ames*, 142 Mo. 187; 43 S. W. 659; *Lobeck* v. *Lee*, 37 Nebr. 158; 55 N. W. 650; *Rice* v. *Angell*, 73 Tex. 350; 11 S. W. 338. He may also solicit the customers of the old business where not prevented from doing so by the articles of copartnership, as is the condition which obtains in this case, without being liable to account to the deceased's representatives therefor. He may also conduct such business by the use of his own surname in connection therewith. He is not barred from so doing by the fact that a like business under the same name was formerly conducted by a partnership of which he was a member. *Goidl* v. *Advance Neckwear Co.*, 123 S. W. (2d) 865. It was said in the *Goidl* case:

> * * * It is now well settled that every· person has the right to honestly use his own name in his own business, and any injury resulting· from such use is *damnum absque injuria*. *Singer Mfg. Co.* v. *June Mfg. Co.*, 163 U. S. 169 * * *.

It is difficult to see, upon the facts which obtain in the instant proceeding, wherein the decedent's interest in the Kaffie Lumber & Building Co. which passed to his heirs had a value in excess of one-fourth of the value of the tangible assets of the business. What is there in the facts of the case which would warrant a willing buyer to pay more for the decedent's interest in the business than he would receive upon a liquidation of the tangible assets?

There is nothing in the evidence that leads us to believe that the location of the partnership's lumber business was of any particular

value to the business. A breakdown of the fixed assets of the partnership business on September 30, 1937, shows as follows:

| | |
|---|---:|
| Lumber yards, sheds, etc | $16,987.72 |
| Rent houses | 810.36 |
| Delivery equipment | 8,897.63 |
| Office fixtures | 216.93 |
| Total | 26,912.64 |

Most of the business was done in the oil fields. For such business the partnership found it necessary to "follow the fields", changing its offices and lumber yards to meet the demands of the trade. We can not conceive that location contributed any good will value to the partnership business.

If it be true that the name "Kaffie Lumber & Building Company" had a value, we can not conceive what value it would have to a purchaser of the business, since Harold Kaffie, who was responsible for the profitable business, had the right to continue that business under the name Kaffie Lumber & Building Co. Quite clearly no willing purchaser of the entire business would have given any more for it by reason of its name. He would appreciate that he would be in competition with the business which was to be carried on under the name of Kaffie Lumber & Building Co. by Harold Kaffie, who, as the evidence shows, had the contacts with the builders and oil operators and, indeed, was the business "go-getter" of the partnership.

Furthermore, it is to be noted that the services of Leopold Kaffie to the partnership were lost by his death. To the extent that his efforts, business acumen, and popularity contributed to the good will, such value died with him.

We have stated above that the determination of the respondent as to the value of the decedent's interest in the partnership is presumptively correct. It is a question as to the amount of proof that the petitioners must offer to rebut that presumption. The petitioners have offered evidence showing the earnings, net worth, and character of the business, and the manner in which it was conducted. They contend that any good will value which the partnership business might have had was lost upon the dissolution of the partnership. In their brief they state:

\* \* \* It is so stated [that any good will ends with dissolution of a partnership] in a digest often cited and highly regarded by the Texas Courts, 32 Tex. Jur. 278:

"If the firm name consists of the surnames of the partners, *dissolution without any agreement or right to take and preserve the name and good will extinguishes both;* it is otherwise, possibly, if the name is an assumed one not descriptive of the partners." [Italics ours.]

The respondent has made his determination of the value of the good will solely upon the basis of the earnings of the partnership. We think it is clear, however, that a partnership may have large earnings without having any appreciable good will which survives the partnership. The large earnings may be due to the efforts of the partners, to the exercise of business judgment, or to fortuitous circumstances in no wise related to good will. Such appears to be the situation in the instant case, for, as testified by Harold Kaffie, there was flush production in certain oil fields which created an enormous demand for lumber during the years 1935, 1936, and 1937. The large earnings of the partnership for those years appear to be due largely to such demand and not to good will.

We are furthermore of the opinion that the nature of the business was not such that good will, as the term is ordinarily understood, was of particular importance. Of course, honest dealings contribute to the prosperity of any business. But the retail lumber business is not one that is patronized by a large percentage of the public. It caters principally to builders and those having a use for lumber. In the majority of instances builders will purchase from those concerns which offer the lumber at the cheapest price and can make prompt deliveries. There is nothing in the facts in this case which leads us to believe that another retail lumber dealer having the knowledge and business acumen of the Kaffie Lumber & Building Co. could not have entered the field and done as well as that company did.

The respondent has made his computation of an assumed good will upon the basis that the business of the partnership was worth 10 times the average annual earnings for the period 1933 to 1937. It has been recognized that where the evidence clearly warrants the finding of good will the good will may be based upon earnings. See *Matter of Silkmann*, 121 App. Div. 202; 105 N. Y. Supp. 872; affd., 190 N. Y. 560; 83 N. E. 1131. The respondent on brief says that his determination of the good will value of the partnership is based upon A. R. M. 34 (1920), Cumulative Bulletin 2, p. 31. He admits, however, that other formulae provided by A. R. M. 34 might be applicable. He states that other formulae, possibly applicable, would show a value for the decedent's interest in the partnership varying from $115,105.46 to $171,093.35. We do not think, however, that any formula for the determination of the value of the good will of the dissolved partnership can be resorted to in this case; for we are of the opinion that the good will value of the partnership which passed to the heirs of Leopold Kaffie, the decedent, had no fair market value at the date of his death.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

STERNHAGEN, MURDOCK, MELLOTT, and OPPER dissent.