OPINION. ARundeul, Judge: Respondent has determined a deficiency in estate tax in the amount of $142,477.71 based upon the determination that at the time of decedent’s death his partnership interest in Maddock and Company had a value of $566,905.38 rather than $256,085.38 representing the price received and the value reported in the estate tax return by the petitioners as the executors of decedent’s estate. Respondent attributes the greater value he has determined to the good will of Maddock and Company which he claims resulted from “such factors as longevity, established name, established products, and stability of customers,” and submits that such good will was evidenced by its record of high earnings. The factors cited by respondent are all recognized elements of good will which, although intangible in nature, constitute a business asset which cannot be disregarded in determining the actual worth of a business. Cf. Texas-Empire Pipe Line Co., 10 T. C. 140, affd., 170 Fed. (2d) 523. However, in fixing the value of the good will of a business, it is equally important to recognize that good will exists as a valuable asset only as an integral part of a going business and cannot be sold, donated, or devised apart from the going business in which it was developed and to which it is thereafter inseparably attached. Sommers v. Commissioner, 63 Fed. (2d) 551; Metropolitan Bank v. St. Louis Dispatch Co., 140 U. S. 436; Pfleghar Hardware Specialty Co. v. Blair, 30 Fed. (2d) 614. Thus, where a dispute as to the fair market value of a business interest revolves around the existence and the value of good will, it is necessary to determine whether the business possessed good will of any appreciable value and whether the nature of the business and the circumstances surrounding (its ownership and operation were such that whatever good will it may have possessed could have survived the transfer of all or a fractional part of the going business. We are satisfied after a, careful consideration of all the evidence herein, including the opinions of the several witnesses called by the parties to testify as to the existence of the value of good will in the business of Maddock and Company and other concerns similarly situated, that Maddock and Company possessed little if any good will of any appreciable value and that the figure at which decedent’s one-half partnership interest was actually sold to Percy under the terms of the agreement of January 24,1946, was fairly representative of the fair market value of the decedent’s partnership interest as of December 31, 1947. The business of Maddock and Company was not unique. The partnership had no patents or trademarks, and with the exception of one minor item of marine paint, held no exclusive agency contracts. It manufactured none of the products it sold and the same nationally known brands were available to its customers at approximately 15 other like dealers in the Philadelphia area. Its advertising program was exceedingly modest in relation to its volume of sales and its retail or counter sales to the general public constituted but a very minor part of its business. Although it carried from 1,500 to 1,800 customers on its books, approximately one-quarter of all sales was made to 25 of these customers who maintained their own purchasing agents and followed the practice of spreading their purchases among different suppliers. The location of the business was satisfactory but apparently not of critical importance for it was shown that because of traffic conditions and the location of its principal customers a move to north or northeast Philadelphia was contemplated in 1946. Moreover, the success of the partnership business was dependent to a large extent upon the ability and experience of its salesmen who had been employed in the business on an average of 30 years. The partnership held no employment contracts with its salesmen and at no time did it have any practical means of insuring the continuance of their services. Moreover, it appears from the testimony of various witnesses that both partners were active in the day-to-day( operation of the business, and that of the two partners, the decedent was more widely known and enjoyed the reputation of being the dominant partner. It was certain that upon the death or withdrawal of either partner, the business would be deprived of his business ability and any good will attributable to his presence therein. Respondent based his determination of the existence and the value of good will primarily upon the partnership’s record of high earnings. In Estate of Leopold Kaffie, 44 B. T. A. 843, wherein the same issue was presented and the same formulae for the valuation of good will were employed by the respondent, we emphasized that it does not necessarily follow from the fact that a business enjoys large earnings that it possesses any appreciable good will. We pointed out that “the large earnings may be due to the efforts of the partners, to the exercise of business judgment, or to fortuitous circumstances in no wise related to good will.” In our opinion, such factors were chiefly responsible for the success enjoyed by Maddock and Company. Moreover, we think it is of particular significance that in determining the value of the decedent’s interest herein, respondent selected a 10-year period of earnings from 1938 to 1947, inclusive, which period embraced 7 years of abnormally high business activity resulting from the demands of war production and postwar reconversion to consumer goods. Even if we were to agree with respondent’s contention that Maddock and Company possessed good will of substantial value, it would by no means follow that the decedent could have realized any value for his share of such good will by demanding a dissolution and liquidation of the business and a sale of his partnership interest prior to his death. As we have previously pointed out, whatever good will may have been possessed by Maddock and Company could not have survived as an asset separate and apart from the going business, and it is clear that decedent could not have required the sale of the going business simply by demanding a dissolution of the partnership. The services and reputation of the decedent and his brother were not subject to sale nor could anything have been realized for the established name of the business, the services of its salesmen, and their personal connections with customers. Decedent could not have compelled Percy to execute a covenant not to compete in connection with the liquidation and sale of the partnership assets, and, in fixing the price he would pay, no informed purchaser would have failed to recognize the depressive effect of the loss of decedent’s association with the business and of Percy’s right to open a competing business in the same locality, to solicit old customers, to employ the same salesmen, and to use the name Maddock in any new firm name. We are convinced that had the decedent during his lifetime decided to bring about a dissolution and liquidation of the partnership as respondent suggests, he could not have realized any greater value for his one-half interest than the price fixed under the agreement of January 24,1946. At the hearing, three witnesses, two produced by the petitioners and one by the respondent, expressed opinions as to the value of the decedent’s one-half interest. Petitioners’ two witnesses set the value at $225,000 and $234,000, respectively. On the other hand, respondent’s witness fixed the value at $457,000 which was substantially less than the value of approximately $567,000 determined in the notice of deficiency. Testimony of this character is merely advisory and is not binding upon our determination, nor are we required to reconcile such conflicting opinions. We have studied with great care the values submitted by all three witnesses and have weighed the merits of the various elements upon which they based their determinations and have found them inconclusive. It suffices to say that we have concluded after a full consideration of all the facts and circumstances which we have set out in our findings of fact and have discussed in some detail above that a willing and informed purchaser would not have offered or paid any sum greater than $256,085.38 for the decedent’s one-half interest in the partnership as of December 31,1947. Therefore, we conclude that the sum of $256,085.38 must be accepted as the value at which decedent’s interest is includible in his estate for Federal tax purposes. In view of our disposition of the issue as to the fair market value of decedent’s partnership interest as of December 31,1947, it is unnecessary for us to discuss or pass upon the issue raised by the parties as to the significance of the restrictions imposed by the oral partnership agreement and the agreement of January 24,1946, upon the decedent’s right to dispose of his partnership interest during his lifetime and after his death. Decision will be entered wnder Bule 60.