ESTATE OF ROBERT R. GANNON, DECEASED, THE FIRST NATIONAL BANK OF MONTGOMERY, ALABAMA, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39358. Promulgated March 31, 1954.

*William S. Pritchard, Esq.*, and *Winston B. McCall, Esq.*, for the petitioner.
*R. B. Wallace, Esq.*, for the respondent.

1076

OPINION.

FISHER, *Judge:*

## I. Valuation of Decedent's Interest in Partnership.

### A. *Agreed Valuation in Supplemental Partnership Agreement Not Binding on Respondent.*

Petitioner included the sum of $41,339.35 in decedent's Federal estate tax return as the value of decedent's interest in the partnership, J. W. Gannon and Company. Section 9 (a) of the partnership agreement provided that upon the death of one of the partners, the surviving partners had the right either to continue the operation of the business or to liquidate it. The agreement further provided that if the survivors elected to continue the business, the value of decedent's interest was to be ascertained on the basis of an agreement of the partners, entered into in advance, on or about the first day of each year,

shortly after the figures of the previous year became available. The amount so fixed was intended to be binding upon the surviving partners and the estate of the deceased partner, in the event of the death of a partner during the year, irrespective of the actual date of death during the year in question. The partners made it a practice each year from 1936 to 1947, inclusive, to file a supplemental statement fixing the agreed value for the particular year. The value for 1947 (the year of decedent's death) was determined to be $41,339.35 as of January 1, 1947. The supplemental agreement was signed by all of the partners on January 31, 1947. The date of decedent's death was October 4, 1947.

Under the terms of the partnership agreement, the surviving partners had the option to purchase decedent's interest at the price agreed upon in the supplemental agreement, or to liquidate the partnership. The first alternative was selected, and the surviving partners gave appropriate notice to decedent's executor. Transfer of decedent's interest to the surviving partners was duly made, and the agreed price was paid to decedent's executor subject to a deduction not here material.

The partnership agreement contained no provisions for fixing the value of a partner's interest for the purpose of a lifetime transfer, and had no optional provisions for lifetime transfers. The agreement provided that the partnership should continue until dissolved by mutual agreement, or by any one of the partners upon 60 days' written notice to the other partners.

The value of a partner's interest as of January 1, 1947, was not determinative in fact of the value of such interest on October 4, 1947.

Respondent urges that upon the foregoing facts, the agreed valuation of decedent's partnership interest as of January 1, 1947, was not binding for Federal estate tax purposes. We sustain respondent's contention in this respect upon the authority of *Estate of George Marshall Trammell*, 18 T. C. 662, 668.

While petitioner does not concede the correctness of our view as expressed above, he does not assert a contrary view in his brief. His argument, and the authorities offered in support of his contentions, are rather directed to the proposition that the value agreed upon by the partners was in fact the fair market value of decedent's interest in the partnership, and that such value is not to be increased for Federal estate tax purposes by any amount attributable to goodwill.

B. *Decedent's Interest in Partnership Had No Goodwill Value.*

Having determined that respondent is correct in his contention that the value fixed in the supplemental partnership agreement is not

binding upon respondent for Federal estate tax purposes, we now examine the issue of whether or not any additional value is to be attributed to goodwill. In this respect we advert to the following:

No item of goodwill was set up on the books of the company. The testimony of one of the surviving partners was to the effect that the partners were of the opinion that there was no goodwill value. The business of the partnership was that of a jobber selling general auto supplies to retailers by personal and direct solicitation. The partnership did no substantial advertising. It had not patents or trade-marks, and had no exclusive agency or selling rights for the sale of any of its merchandise. It faced substantial competition from numerous organizations handling the same lines and carrying on business in the same way. Except for the services of employees, including salesmen, who received compensation for their services as such, the sales and ultimate earnings of the partnership were attributable to some extent to return on investment, but otherwise, and in the main, to the personal efforts and services of the partners, including direct contacts with customers by the partners. The partners were brothers, the deceased partner being the eldest. Decedent had maintained contacts with the larger customers, and had handled the larger accounts. He was also, in a sense, the sales manager. Counsel for respondent conceded at the trial that there was no issue of good faith in the fixing by agreement of the value of decedent's interest in the partnership.

Respondent, in urging the existence of a substantial goodwill value, refers to the substantial earnings of the partnership and urges that such earnings were not affected by the absence of one of the partners (who was away in the armed service for 21 months beginning in January 1943) or the fact that decedent had not been as active in the business in 1947 as he had been in previous years. Respondent does not mention (although he does not deny) that the sales of the partnership fell off 25 per cent in the year following decedent's death. Respondent also relies upon the use of a formula based upon principles set forth in A. R. M. 34, 2 C. B. 31, 32. We will discuss the formula at a subsequent point in our opinion, but we feel that the convenience of continuity of discussion makes it desirable at this point to refer to our opinion in *Estate of Henry A. Maddock*, 16 T. C. 324, 329–331. The facts involved in the *Maddock* case parallel so closely, in principle, the facts of the instant case that we quote *in extenso* the analysis and views expressed by Judge Arundell in that case as follows (p. 329):

Respondent attributes the greater value he has determined to the good will of Maddock and Company which he claims resulted from "such factors as longevity, established name, established products, and stability of customers," and submits that such good will was evidenced by its record of high earnings.

The factors cited by respondent are all recognized elements of good will which, although intangible in nature, constitute a business asset which cannot be dis-

regarded in determining the actual worth of a business. * * * However, in fixing the value of good will of a business, it is equally important to recognize that good will exists as a valuable asset only as an integral part of a going business and cannot be sold, donated, or devised apart from the going business in which it was developed and to which it is thereafter inseparably attached. * * *

Thus, where a dispute as to the fair market value of a business interest revolves around the existence and the value of good will, it is necessary to determine whether the business possessed good will of any appreciable value and whether the nature of the business and the circumstances surrounding its ownership and operation were such that whatever good will it may have possessed could have survived the transfer of all or a fractional part of the going business.

We are satisfied * * * that Maddock and Company possessed little if any good will of any appreciable value * * *.

The business of Maddock and Company was not unique. The partnership had no patents or trademarks, and with the exception of one minor item of marine paint, held no exclusive agency contracts. It manufactured none of the products it sold and the same nationally known brands were available to its customers at approximately 15 other like dealers in the Philadelphia area. Its advertising program was exceedingly modest in relation to its volume of sales and its retail or counter sales to the general public constituted but a very minor part of its business. * * * the success of the partnership business was dependent to a large extent upon the ability and experience of its salesmen who had been employed in the business on an average of 30 years. The partnership held no employment contracts with its salesmen and at no time did it have any practical means of insuring the continuance of their services. Moreover, it appears from the testimony of various witnesses that both partners were active in the day-to-day operation of the business, and that of the two partners, the decedent was more widely known and enjoyed the reputation of being the dominant partner. It was certain that upon the death or withdrawal of either partner, the business would be deprived of his business ability and any good will attributable to his presence therein.

Respondent based his determination of the existence and the value of good will primarily upon the partnership's record of high earnings. In *Estate of Leopold Kaffie*, 44 B. T. A. 843, wherein the same issue was presented and the same formulae for the valuation of good will were employed by the respondent, we emphasized that it does not necessarily follow from the fact that a business enjoys large earnings that it possesses any appreciable good will. We pointed out that "the large earnings may be due to the efforts of the partners, to the exercise of business judgment, or to fortuitous circumstances in no wise related to good will." In our opinion, such factors were chiefly responsible for the success enjoyed by Maddock and Company. Moreover, we think it is of particular significance that in determining the value of the decedent's interest herein, respondent selected a 10-year period of earnings from 1938 to 1947, inclusive, which period embraced 7 years of abnormally high business activity resulting from the demands of war production and postwar reconversion to consumer goods.

We now turn to a consideration of the significance, if any, of the principles of A. R. M. 34, 2 C. B. 31, 32 as reflecting upon the question of goodwill value in the instant case.

It is obvious that a formula does not of itself create goodwill value. On the other hand a formula may, in a proper case, be of great value in the solution of the difficult problem of determining goodwill value.

The advantage of the use of a formula, however, presupposes that it is sound in principle and that it is applied to proper primary premises of fact applicable to the special circumstances in relation to which it is used.

The respondent offered as his only witness the internal revenue agent who investigated the Federal estate tax return here in question. No effort was made to establish that the agent was qualified to express an opinion as to goodwill value. Respondent's counsel twice stated that he was not asking the witness to express an opinion, but was merely asking him to state the manner in which he had calculated the value of the partnership as a whole, and the goodwill value which was included as one of the elements of his valuation. The Judge presiding in the case stated several times that he did not understand that the witness was offered as a qualified valuation expert, and counsel for respondent made no objection to these statements. Respondent apparently produced the witness solely to explain the calculations which went into the determination of valuation set forth in the deficiency notice, which mentioned unexplained lump-sum valuation figures. Respondent's brief appears to assume that the principles of A. R. M. 34 are self-operative, and that the premises upon which its application is based may be assumed.

We are, of course, mindful of the fact that the burden of proof is upon petitioner, but we are faced with the task of determining the probative value, if any, of the affirmative testimony of the witness.

We need go no further than to mention that one of the significant factors on which the calculation of the witness was based was the assumption that the total average fair compensation for the services of the partners was $8,400. The witness took these figures from the partnership agreement. The most casual examination of the record discloses that the amounts provided for in the agreement for "salaries" were merely nominal, and had no relationship whatever to the fair value of the services of the partners or fair compensation therefor. A proper assessment of fair compensation or of the appropriate amount of the earnings of the partnership to be attributed to the services of the partners is an essential requirement for the application of the formula. We find that this factor was grossly underestimated by the agent, and that the possible usefulness of the formula dissolves with such underestimation. We have already expressed our opinion that the earnings of the partnership were attributable to return on investment and the activities of the partners, compensation to salesmen and other employees having been deducted in determining average earnings which constituted likewise a factor in the application of the formula. We add that in considering our attribution of earnings to the services of the partners we were not influenced by the opinion testimony of the accountant who appeared as a witness for petitioner.

We find on the basis of the foregoing that the testimony of the internal revenue agent had no probative force in respect of valuation issues.

We conclude, upon our own analysis of the facts, and upon the authority of *Estate of Henry A. Maddock, supra,* that decedent's interest in the partnership had no goodwill value.

C. *Decedent's Share of Partnership Profits From Agreed Valuation Date to Date of Death Included in Valuation of Partnership Interest.*

Decedent's one-third interest in the net profits of the partnership, after salaries, from January 1, 1947, to October 4, 1947, was $18,522.78. We conclude that the value of decedent's interest in the partnership must be increased to reflect this amount. We realize that decedent's executor and the surviving partners construed the partnership agreement to the effect that decedent's estate was entitled to no part of these profits, and it appears that no part thereof was paid to decedent or decedent's estate.

We are not called upon to resolve any issue between decedent's executor and the surviving partners on the question of whether or not decedent's estate should have received any share of the profits. We have already held that the agreed valuation of decedent's partnership interest was not binding upon respondent. We again call attention to the fact that the agreed valuation was as of January 1, 1947, and not as of October 4.

In order to aid us in our consideration of the valuation issue, petitioner's counsel attached to his brief as exhibit B an opinion of counsel addressed to the trust department of the First National Bank of Montgomery, Alabama. In reviewing the issue before us, we think it appropriate to quote one sentence of the opinion as follows:

My information is that the partners had established a. *custom* of declaring net profits under Section 5 only on December 31 of a given year and that no demand for a determination at any other time was made at any period during 1947 by any of the partners, though apparently under the language of Paragraph 5 net profits *might have been declared at any time upon unanimous consent.* [Italics supplied.]

The opinion does not consider whether the surviving partners could have refused, unreasonably, to determine and pay over to decedent his share of profits had he made appropriate demand as of October 4, 1947.

We call attention to the following possibilities under the partnership agreement:

(a) If the surviving partners had elected to liquidate the partnership upon decedent's death, his estate would have received one-third of the proceeds of liquidation, including profits (section 9 (a)).

(b) The same rights would have accrued to decedent in the event of dissolution of the partnership during his lifetime, whether by mutual agreement or upon notice by any of the partners (section 8).

(c) While decedent could not have sold his partnership interest during his lifetime without the consent of the other partners (section 11), his power to cause a dissolution might well have induced the other partners to buy his interest, or consent to its sale, had he desired to sell it. The remaining partners might have welcomed the opportunity to purchase his interest during his lifetime, if he had been willing to dispose of it.

We have no doubt that if decedent had been a "willing seller" of his partnership interest on October 4, 1947, he would have insisted that his share of the profits be included in the selling price and that a "willing buyer" would have had no reasonable objection to his proposal.

We have noted the fact that petitioner elected the optional valuation date for the purpose of valuing decedent's interest in the partnership. It is clear that petitioner's election cannot affect the amount to be attributed to decedent's share of the earnings upon the facts in this case. In this respect, we need merely cite the material provisions of Regulations 105, section 81.11 as follows:

In valuing the gross estate under the optional valuation method, all of the property interests existing at the date of death which are a part of the gross estate as determined under the subsections of section 811, as amended, constitute the property to be valued as of one year after the date of the decedent's death, or as of the date of decedent's death, or as of some intermediate date. Such property is hereinafter referred to as "included property". "Included property" as of the date of the decedent's death remains "included property" for the purpose of valuing the gross estate under the optional valuation method even though it is changed in form during the optional valuation period by being actually received, or disposed of, in whole or in part, by the estate. * * *

We hold, on the basis of the foregoing discussion, that the amount of $18,522.78, representing decedent's share of the partnership net earnings after salaries for the period from January 1, 1947, to October 4, 1947, must be added to the agreed valuation in determining the value of decedent's interest in the partnership for Federal estate tax purposes as of the agreed valuation date. The sum of $33.32, representing decedent's accrued salary, has been included in our valuation. Petitioner does not contest the inclusion of the latter amount in gross estate.

## II. Withdrawals From Partnership by Decedent.

We have already found as a fact that decedent was indebted to the partnership at the time of his death in the amount of $17,425.27 on the basis of certain withdrawals; that claim for the above amount was filed in decedent's estate; and that the indebtedness was paid by de-

ducting the amount of the debt from the agreed value of decedent's interest in the partnership. It is clear that the debt was one properly allowed under the laws of the State of Alabama, and, assuming the correctness of our finding that the amount in fact represented a debt, respondent does not dispute the proposition that, under ordinary circumstances, the item would be deductible under the provisions of Internal Revenue Code section 812 (b).

Respondent's contention is set forth in his brief as follows:

The Commissioner in his determination of the assets of J. W. Gannon and Company, and decedent's interest therein, took into account the $17,425.27 withdrawn by decedent; therefore, to allow the deduction under schedule K of the estate tax return would amount to a duplication of deductions.

Respondent's further reasoning appears to be to the effect that, if the value of decedent's interest in the profits of the partnership from January 1, 1947, to October 4, 1947, is not added to the value of decedent's interest in the partnership, the total of withdrawals by decedent during the same period should not be allowable as a debt. It is only in relation to this reasoning that we find any possible basis for the contention that the allowance of the debt would amount to a duplication of deductions.

Since we have increased the value of decedent's interest by the amount of his share of partnership earnings for the above period, we assume that we have eliminated, in practical effect, the suggested duplication with which respondent is concerned.

### III. Ownership of Automobile.

Our finding that the 1947 Chevrolet sedan (included in gross estate by respondent at a value of $1,800) was in fact owned by decedent's wife at the time of his death is sufficient for us to hold that the item is not includible in gross estate under the provisions of Internal Revenue Code section 811 (a) in the light of the limited issue raised by respondent. Respondent admits that the record title was in the name of the wife, but asserts that the automobile was a "family" car and that decedent had such an interest therein as to require the inclusion of its value in gross estate. Respondent did not assert in his deficiency notice, or in the brief filed on his behalf, that this small item was the subject of a transfer in contemplation of death.

We find upon the record that petitioner has met the burden of proof by affirmative evidence that the automobile was owned by decedent's wife at the time of his death, and that the record does not support respondent's contention that decedent had such an interest in the automobile (which interest is not described by respondent) which would require the inclusion of the value thereof in gross estate.

Since the issue of contemplation of death is nowhere suggested we find no reason to discuss it.

The parties have stipulated that the additional costs and expenses incurred by the executor in administering the estate, including the costs and expenses incurred in this proceeding, will be allowed as additional deductions under Rules 50 and 51.

*Decision will be entered under Rule 50.*