Joseph V. MEISTER, David Lewittes, Morris Lewittes, Charlotte Lewittes and Fannie Lewittes, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Nos. 278–282, Dockets 26885–26889.

United States Court of Appeals Second Circuit.

Argued April 5, 1962.

Decided April 25, 1962.

Aaron Lewittes, New York City (Julian S. Bush, New York City, on the brief), for petitioners-appellants.

Daniel K. Mayers, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson, Robert N. Anderson, and Charles B. E. Freeman, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent-appellee.

Before CLARK and FRIENDLY, Circuit Judges, and ANDERSON, District Judge.

ANDERSON, District Judge.

Petitioners are transferees upon liquidation of the corporate taxpayer against whom the Commissioner assessed a deficiency for the tax year which ended September 30, 1951. Payment of a liquidating dividend to them left the corporate taxpayer unable to pay any deficiency which might be found due. There is no dispute as to petitioners' liability, to the extent of the liquidating dividend each received, in the event it is found that the alleged deficiency was correctly assessed. The Tax Court upheld the Commissioner's determination of a deficiency, though in a slightly different amount, and this appeal is from that decision.

Charlotte Corporation, under its original name of Chesterfield Furniture Shops, Inc., manufactured and sold furniture under the trade name "Chesterfield Furniture." Its showroom was located at its plant in Williamsport, Pennsylvania. Nathan Greenberg controlled and operated Charlotte Corporation. Lycoming Chair Company was owned by Nathan Greenberg's wife, Nettie. It produced frames for upholstered furniture which it sold exclusively to Charlotte, and it was Charlotte's sole supplier of frames. It was run by Nathan Greenberg as an integrated part of Charlotte, and it occupied the same premises with Charlotte.

Negotiations with David Lewittes, commencing in June, 1950, led to a sale of the Charlotte and Lycoming properties on October 12, 1950. The complete agreement comprised a sales contract, an employment contract for Nathan Greenberg, and a lease of the premises in which the two corporations had been housed. These several contracts had been assigned to the newly organized Chesterfield Furniture Manufacturing Corporation, the corporate taxpayer, on October 11, 1950.

The sales agreement provided for the sale of the fixed assets, inventory, records, trade marks and trade names, and good will of the "frame and furniture business." It set the price for the fixed assets at $27,500 and established the

method by which the prices of the items of inventory were to be determined. It valued the good will, trade names and trade marks, and records at one dollar. Under the agreement, the sellers were also obliged permanently to cease active business operations and to refrain from the use of the name "Chesterfield" in future business activities.

The employment contract appointed Nathan Greenberg sales manager and general consultant for the buyer for a period of one year, actually requiring only eight months of service, at a salary of $30,000. The premises were leased for a period ending December 31, 1952 at an annual rental of $23,400. The lease contained both renewal and purchase options.

An inventory was taken by representatives of both the buyer and the seller from October 9, 1950 through October 12, 1950. Pricing was done in accordance with the formula set out in the sales agreement and, where no invoices could be found, raw materials were priced on the spot by the seller and the buyer. Upon completion of the inventory and immediately prior to the signing of the sales agreement, certain changes were made in the sales agreement at the request of Charlotte's accountant. The only significant change concerned the value of the good will, trade marks and trade names, and records, originally inventoried at "one dollar," which was amended to read "absorbed in inventory."

Under the terms of the sales agreement the buyer was entitled to, and did, reject $15,000 worth of merchandise from the inventory; but these rejected items were subsequently purchased by the buyer for $7,500.

Chesterfield operated the business thus obtained until June 30, 1952, when it sold its assets to Lewittes and Sons and made cash distribution to its stockholders in complete liquidation. Lewittes and Sons continued to use the trade name "Chesterfield" in its business. Nathan Greenberg had continued in the employ of Chesterfield until January 19, 1951. After his departure a number of employees left, others were laid off, and many of Charlotte's old customers ceased buying from Chesterfield.

In its tax return for the year 1950, Charlotte allocated $100,000 of the total sales price of $190,611.93 to the sale of good will. The sales price had been arrived at by adding to the calculated value of the inventory the agreed price of the fixed assets. Chesterfield, however, did not allocate any portion of the purchase price to good will, either on its books or in its tax returns for the fiscal year ending September 30, 1951 and the period October 1, 1951 to June 30, 1952.

In upholding the determination of a deficiency the Tax Court found that Chesterfield had paid $55,000 for good will. This appeal by the individual petitioners, to which Charlotte is not a party, is from that decision.

The petitioners claim that the fair market value of all of the items in the inventory was fixed by bona fide arm's length negotiation by a buyer and a seller who had adverse interests and antithetical tax desires; and that the transaction itself shows that the purchase price was paid exclusively for the goods listed in the inventory and was the total of the fair market value of each of the items. They assert that the parties had no intention of including, and did not include, anything for good will. The petitioners had the burden of proving facts to substantiate these claims. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); C. I. R. v. Chatsworth Stations, Inc., 282 F.2d 132, 135 (2 Cir., 1960).

The court below found, however, that the sale encompassed the total going business of Charlotte and Lycoming, which continued their operations, and that the sales agreement provided for the transfer of the "good will of the frame and furniture business." It found that an express effort was made to preserve the value of the name "Chesterfield" and to provide protection against the diminution of that value from future competition by the sellers. It noted the change in the formal agreement by which the words

"absorbed in inventory" as the payment for good will were substituted for "one dollar ($1.00)." It concluded that the purchase price was fixed in a context of the sale of a going concern and that good will of some value was transferred by the sale.

The Tax Court considered all the factors entering into an appraisal of the value of good will, including Nathan Greenberg's value to the business as an individual, his deposition testimony that the inventory items were worth forty-five cents on each dollar of valuation, the limited number of customers, the value of the name "Chesterfield," the purchase of $15,000 worth of rejected inventory for $7,500 and the continued book losses of Lycoming, and found the value of the good will to be $55,000. There was sufficient evidence to support these findings and conclusions.

■ Review on this appeal is limited to deciding whether the finding of the Tax Court of the value of the good will purchased by the petitioners is "clearly erroneous." If not, the finding must be allowed to stand, even though this court might have arrived at a different valuation had it made the calculation in the first instance.

In Webster Investors, Inc. v. Commissioner, 291 F.2d 192 at p. 194 (2 Cir., 1961) this court said:

"The law is clear that this court must allow the finding of fact of the Tax Court to stand unless it is clearly erroneous, and the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.' "

■■ The Tax Court is not bound to accept the parties' allocation of purchase price among the various assets. C. I. R. v. Chatsworth Stations, Inc., supra. It rests upon the trier of fact, exercising judgment and reason in view of the circumstances presented, to select the method of determining the fair market value of the good will of a particular business and to fix the valuation. Colonial Fabrics, Inc. v. Commissioner of In-ternal Revenue, 202 F.2d 105 (2 Cir., 1953). As this court explained in the Webster case, the testimony at the trial need not refer to the specific figure selected by the trier; it is sufficient that the figure is within the suggested range of valuations. And see Guggenheim v. Helvering, 117 F.2d 469 (2 Cir., 1941), cert. den. Guggenheim's Estate v. Commissioner, 314 U.S. 621, 62 S.Ct. 66, 86 L.Ed. 499 (1941). Ullman v. C. I. R., 264 F.2d 305 (2 Cir., 1959) in no way qualifies what has been said above; that case simply held that the *parties* bear a heavy burden of proof in overcoming valuations they have set in arm's-length transactions.

■ In oral argument the petitioners cited two cases which, they assert, hold that when arm's-length bargaining has led to a conclusion that no good will is included in a sale, that conclusion should not be disturbed: Republic Steel Corp. v. United States, 94 Ct.Cl. 476, 40 F.Supp. 1017 (1941) and Payne v. C. I. R., 22 T.C. 526 (1954). Both of these cases are distinguishable on their facts from the present case; they do, however, enunciate the rule that the trier must determine presence or absence of good will as an item in the sale, from an analysis of the evidence before it. Unlike the case at bar, the buyer in Republic Steel had no intention of purchasing a continuing business; the sole interest of the buyer was to acquire certain patents which could not be acquired other than through the purchase of all the assets of the patent holder. The Court of Claims rightly concluded that no good will had passed in the transaction. In the Payne case the Tax Court refused to accept the valuation assigned to a covenant not to compete when it was shown that such valuation was patently unrealistic.

In the present case the Tax Court gave consideration to all the factors involved and applied judgment, experience and reason; there was in the evidence a rational basis for the conclusions reached; and its decision was not "clearly erroneous." Colonial Fabrics v. Commissioner, supra; Webster Investors, Inc. v. Com-

missioner, supra; Shunk v. Commissioner, 173 F.2d 747 (6 Cir., 1949).

The taxpayers have not sustained their burden in challenging the Commissioner's allocation as modified by the Tax Court and its judgment is affirmed.