WINCHELL COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 646–67. Filed January 28, 1969.

*Frederick C. Fiechter, Jr.,* for the petitioner.
*Peter J. Picotte II,* for the respondent.

#### OPINION

TIETJENS, *Judge:* The Commissioner determined deficiencies in petitioner's income tax of $433.33 and $2,500, respectively, for 1963 and 1964.

We must decide what portion, if any, of a $25,000 payment petitioner made to the Bingham Co., pursuant to an agreement between them, was paid for property which is subject to depreciation.

The facts have been fully stipulated. The stipulation and the exhibits attached thereto are incorporated herein by this reference.

The Winchell Co. (hereinafter referred to as petitioner) is a corporation whose principal office at all times has been located in Philadelphia, Pa. An accrual basis taxpayer, petitioner filed its corporate income tax returns for the calendar years 1963 and 1964 with the district director of internal revenue, Philadelphia, Pa.

On October 28, 1963, petitioner, a corporation engaged in the printing business at 1315 Cherry Street in Philadelphia, entered into an agreement with the Bingham Co. (hereinafter referred to as Bingham), an old and respected company which was also engaged in the printing business with its principal office located at the same address. Bingham's balance sheet as of October 31, 1963, showed the following: Assets, $116,451; liabilities, $159,957; stockholders' equity (deficit), $43,506.

The agreement, which was in the form of a letter of intent addressed to George W. Scudder, Jr., president of the Bingham Co., provided as follows:

The Directors of The Winchell Company approved having you, James R. Shoch and Allan C. Hanson join the sales staff of our organization on the following terms:

1. The Bingham Company to dispose of all of its equipment and facilities and vacate its present place of business at the discretion of Winchell.

2. The Winchell Company, with permission of building owners, shall take over the present lease immediately, or after the present lease expires, or may choose not to lease the space.

3. Winchell has the option to purchase standing and other type forms and such other of Bingham's production and office equipment, materials and furnishings it desires at the prevailing market values or at a price agreed upon by Gloeckner and Scudder.

4. For a consideration of $1.00 all the good will of Bingham, including the right to use in every lawful manner the name "Bingham" and/or "The Bingham Company" together with so much of Bingham's records, lists and files as shall be necessary to enable Winchell to efficiently handle the sales of Scudder, Shoch and Hanson.

Thereafter, Bingham shall proceed with its complete liquidation; and if for any reason its corporate existence is not ended by dissolution at the option of Winchell, it shall not at any time compete with Winchell or otherwise interfere with Winchell or its business.

5. Bingham shall retain all its cash and other assets and their proceeds and shall collect for its own account all of its accounts receivable.

6. Winchell agrees to complete all work that Bingham chooses to have them do. Winchell will bill the customer for such work and credit commission on sales to Scudder, Shoch or Hanson.

7. Winchell will not assume any of the debts, liabilities or obligations—present or future—of Bingham, other than to complete unfinished work to the extent herein stated.

8. Bingham to write appropriate letters informing any and all interested parties that negotiations to join such parties are broken off.

9. Winchell may hire all, some or none of the Bingham personnel, other than Scudder, Shoch and Hanson.

10. Scudder, Shoch and Hanson to sign a 5 year employment agreement similar to sample enclosed.

11. Winchell will employ Scudder, Shoch and Hanson and compensate them upon the same basis as other persons shall be paid, from time to time, for similar services.

Drawing accounts against sales commissions shall be: George W. Scudder, Jr. $300.00 per week; James R. Shoch—$250.00 per week; Allan C. Hanson—$160.00 per week. A copy of the "Winchell Sales Commission Plan" is attached.

12. All reasonable sales expenses are paid monthy by Winchell—$.10 per mile is allowed for use of automobile in business.

13. Winchell agrees to advance to The Bingham Company $25,000.00 when the Bingham Board of Directors approves this letter and the conditions mentioned herein are fulfilled. This money is to be used by The Bingham Company

to pay creditors other than stockholders, officers or other employees of the company.

Approved by:        Sincerely,

(S) G. W. Scudder, Jr.        (S) F. H. Gloeckner
 *President of The Bingham*     F. H. Gloeckner
 *Company*            *President*
(S) G. W. Scudder, Jr.
 George W. Scudder, Jr.    Approved by:
(S) James R. Shoch
 James R. Shoch       (S) F. H. Gloeckner
(S) Allan C. Hanson     *Chairman of the Board of Directors*
 Allan C. Hanson      *of the Winchell Company.*

Pursuant to the agreement, petitioner exercised its option and purchased at cost or at reduced price Bingham's standing forms, paper and ink, inventory, and work in process. Bingham transferred to petitioner its records, customer lists, and files. These latter assets were considered to have value and petitioner expected their acquisition would increase its sales. George W. Scudder, Jr., James R. Shoch, and Allan C. Hanson executed separate employment agreements with petitioner. Each agreement provided that the employee would not become directly or indirectly engaged in printing or the selling thereof except for Winchell for a period of 5 years. They had not theretofore been employed by Bingham under formal employment agreements and had been free at all times to terminate their employment with Bingham. In January 1964, petitioner moved into and assumed the lease to the premises previously occupied by Bingham.

Petitioner paid Bingham the $25,000 called for in paragraph 13 of the letter agreement by check dated February 24, 1964. The check was immediately endorsed for deposit in an escrow account created for the benefit of Bingham's creditors and the proceeds were subsequently used to pay the creditors. Bingham recorded the receipt of the $25,000 as a loan on its books and records.

Petitioner's 1963 and 1964 corporate income tax returns treated the payment of the $25,000 to the Bingham Co. as the cost of a covenant not to compete. It deducted as amortization of that covenant $833.34 in 1963 and $5,000 in 1964. The deduction was claimed in accordance with the following authorization of petitioner's Board of Directors:

Whereas—Employment Agreements with G. W. Scudder, Jr., James R. Shoch and Allan C. Hanson will substantitally [sic] increase sales of The Winchell Company.

Whereas—The $25,000 to be paid to Bingham Company will enable that Company to pay its debts; thereby creating favorable publicity for The Winchell Company as well as Scudder, Shoch and Hanson.

WHEREAS—In the Bingham Agreement, The Winchell Company secures Bingham's records, lists and files; thereby enabling Winchell to handle efficiently sales of Scudder, Shoch and Hanson.

THEREFORE—The liability of $25,000 of The Bingham Company Agreement is to be written off by The Winchell Company over a five year period which is the term of the above mentioned Salesmen's employment contracts. Any refund of the $25,000 would thereafter reduce the write-off, or be included in income if the full amount had previously been written off.

The Commissioner disallowed the deductions for the reason that petitioner did not acquire any asset by the $25,000 payment, or, alternatively, if it did acquire an asset, it was of indefinite useful life and therefore not amortizable.

Section 167(a)(1), I.R.C. 1954,[1] provides that there shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear, and tear of property used in a trade or business. Section 1.167 (a)–3, Income Tax Regs., provides, in pertinent part, as follows:

If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance. Examples are patents and copyrights. An intangible asset, the useful life of which is not limited, is not subject to the allowance for depreciation. No allowance will be permitted merely because, in the unsupported opinion of the taxpayer, the intangible asset has a limited useful life. No deduction for depreciation is allowable with respect to goodwill.

As we understand the petitioner, the intangible asset for which it claims to have paid $25,000 and which it seeks to amortize over a 5-year period is the covenants not to compete contained in the three 5-year employment contracts. To the contrary, the Commissioner argues that, in fact, no amount of the $25,000 payment constitutes consideration for such covenants.

The amount, if any, that actually represents consideration for the covenants not to compete contained in the three 5-year employment contracts is a question of fact. In determining the incidence of Federal income taxation, we examine the substance and not merely the form of the transaction. While no particular fact is conclusive, there are several factors which tend to support our view that no consideration was paid, or intended to be paid for the covenants not to compete. In the first place, the payment was made to the Bingham Co., which had no employment contracts with the respective salesmen. They were completely free to terminate their employment and Bingham had no way of retaining or otherwise disposing of their services if they wished to leave. We do not understand how any amount of the

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.

$25,000 sum that was paid to the Bingham Co. can be allocated to the noncompete covenants of the employment contracts which Bingham did not own and of which it had not the power to dispose.

Second, we do not accept petitioner's factual claim that the money must have been paid to secure the three employment contracts since nothing else was acquired from Bingham. Petitioner acquired something of value in the form of Bingham's ceasing to exist—a noncompete benefit not exclusively allocable to the services of Bingham's three key salesmen, and one which certainly has no ascertainable life over which it could be amortized. Petitioner also gained the opportunity to expand its operations in the same building that housed its own principal place of business. The option to purchase Bingham's equipment was valuable and resulted in savings to petitioner when it subsequently purchased that equipment at cost or at reduced prices. The records, customer lists, and files which petitioner acquired were considered valuable and petitioner expected their acquisition would increase its sales. Bingham's goodwill also had value. While the agreement allocates $1 to these last-mentioned items, the Commissioner is not bound by that allocation. We do not find this perfunctory allocation to be supported by any evidence other than the recitation in the letter agreement. It appears, too, that a substantial portion of the $25,000, all of which was used to pay Bingham's creditors, was intended to create goodwill for petitioner and its new salesmen in the form of favorable publicity.

Third, the agreement contains no allocation of the $25,000 payment or any part thereof to the employment contracts. It has been held that the failure of the parties to allocate in an agreement any part of the consideration to a covenant not to compete is "strong evidence" that no allocation was intended. *Delsea Drive-In Theatres, Inc.* v. *Commissioner*, 379 F. 2d 316 (C.A. 3, 1967), affirming per curiam a Memorandum Opinion of this Court; *Rinehart Oil News Co.* v. *Commissioner*, 369 F. 2d 692 (C.A. 5, 1966), affirming per curiam a Memorandum Opinion of this Court.

Last, there is no evidence of negotiations indicating the parties intended that any portion of the $25,000 payment should separately relate to any covenant not to compete. Cf. *Grant T. Rudie, Jr.*, 49 T.C. 131 (1967); *Benjamin Levinson*, 45 T.C. 380 (1966). In other words, the covenants were not actually dealt with as a separate item in the transaction.

We think the function of the employment contracts herein was to assure the petitioner the beneficial enjoyment of the goodwill of the Bingham Co., including the records, lists, and files obtained. They had no independent significance apart from assuring the effective transfer

of such goodwill. See *Alfred H. Thoms*, 50 T.C. 247, 255 (1968); *Ullman* v. *Commissioner*, 264 F. 2d 305 (C.A. 2, 1959), affirming 29 T.C. 129 (1957); and *Aaron Michaels*, 12 T.C. 17 (1949).

We conclude that no portion of the $25,000 payment was for an asset with a determinable life. The claimed deductions cannot be allowed.

*Decision will be entered for the Commissioner.*