OPINION In these consolidated cases, we are presented with the following issues: (1) Whether Wilmot Fleming Engineering Co. properly computed its basis in machinery and equipment purchased from decedent and Wilmot in respect of which property the corporation claimed depreciation deductions for its fiscal years 1968,1969, and 1970 in excess of the respective amounts allowed therefor by respondent; (2) Whether decedent and Wilmot properly characterized their respective gain from the sale of their interests in partnership assets as capital gain; and (3) Whether, as a result of the aforementioned sale, Wilmot realized an investment credit recapture in excess of that reported on his return for 1968. All of these questions entail, as a threshold matter, our determination as to whether goodwill was among the assets of the going business distributed to decedent, William, and Wilmot upon the dissolution of their partnership and immediately thereafter transferred to Wilmot Fleming Engineering Co. We must then consider the proper allocation of the sale price paid to decedent and Wilmot for their respective interests in such assets.[13] It is not disputed that the sum of $410,000 paid to decedent and Wilmot for their shares of the assets of the business exceeded their combined basis[14] in these assets by the amount of $98,786.85. In setting up its books as of March 31, 1968, the corporation first allocated the sale price among all the assets to the extent of their book values. It then attributed the excess[15] sale price to machinery and equipment with a resulting cost basis therein of $289,937.04 which, when added to the basis of the assets received from William,[16] constituted the basis upon which the corporation, computed the total depreciation claimed. Subsequently, in response to the position taken by respondent in respect of the other petitioners, the corporation allocated a portion of the sale price to deferred sales, which reallocation, by increasing cost of goods sold, gave rise to the claim for refund of income tax for fiscal 1968. In neither its original allocation nor its subsequent adjustment did the corporation treat any part of the sale price as attributable to goodwill. On the other hand, Wilmot and the Estate of Wilmot Fleming both contend that the total $98,786.85 gain realized represented goodwill and therefore was properly reported as capital in character. If attributable, however, to machinery and equipment, such gain will, pursuant to sections 735(a)(1)[17] and 751(c), be treated as ordinary (thus effecting recapture of accelerated depreciation under section 1245) and further, warrant application of section 47[18] under which Wilmot would realize the investment credit recapture in issue. Respondent, having taken inconsistent positions as between the two sides of the sale transaction, is in essence a stakeholder herein.[19] See Leon R. Meyer, 46 T.C. 65 (1966), affd. on this issue 383 F. 2d 883 (8th Cir. 1967); Estate of Goodall v. Commissioner, 391 F. 2d 775, 782-783 (8th Cir. 1968), cert. denied 393 U.S. 829 (1968); M. Lucile Harrison, 59 T.C. 578, 592 n. 13 (1973); Freeport Transport Inc., 63 T.C. 107, 116-117 (1974) (concurring opinion by Dawson, C.J.); J. Leonard Schmitz, 51 T.C. 306 (1968), affd. sub nom. Throndson v. Commissioner, 457 F. 2d 1022 (9th Cir. 1972). On brief, respondent suggests that the parties did not intend to allocate any part of the sale price to either goodwill or deferred sales.[20] If, however, we find that the excess sale price is not allocable in its entirety to machinery and equipment and in fact is attributable also to deferred sales, respondent proposes an allocation between the two classes of assets in proportion to their respective fair market values. Turning, then, to the question of whether goodwill was among. the assets purchased! by the corporation from decedent and Wilmot, we note at the outset that the burden is on Wilmot and the Estate of Wilmot Fleming to show what portion of the sale price is attributable to goodwill. Charles W. Miller, 56 T.C. 636 (1971); Redman L. Turner, 47 T.C. 355 (1967). Such determination is essentially a factual inquiry. Meister v. Commissioner, 302 F. 2d 54 (2d Cir. 1962); Republic Steel Corp. v. United States, 40 F. Supp. 1017 (Ct. Cl. 1941); George H. Payne, 22 T.C. 526 (1954). Accordingly, upon our analysis of the instant transaction in the context of the factors recognized as indices of goodwill, see, for example, Theo. Planz, Inc., 10 B.T.A. 1158 (1928); D. K. MacDonald, 3 T.C. 720 (1944); Erwin D. Friedlaender, 26 T.C. 1005 (1956); Estate of Henry A. Maddock, 16 T.C. 324 (1951); In Re Brown, 242 N.Y. 1, 150 N.E. 581 (1926), we find that no goodwill was sold by decedent and Wilmot. While we recognize that the absence of any specific reference to goodwill in the written agreements supra is not conclusive, Copperhead Coal Co. v. Commissioner, 272 F. 2d 45 (6th Cir. 1959), affg. a Memorandum Opinion of this Court; John Q. Shunk, 10 T.C. 293 (1948), revd. and remanded on another issue 173 F. 2d 747 (6th Cir. 1949), such fact, together with the fact that goodwill was not specifically mentioned in the negotiations between William and Wilmot, strongly militates against the existence of goodwill. Moreover, even if we were to view the language of the March 28,1968, agreements providing for the use of the name “Wilmot Fleming” as indicative of goodwill,[21] the failure to allocate any portion of the purchase price thereto evidences that no such allocation was intended. Cf. Charles W. Miller, supra; Annabelle Candy Co. v. Commissioner, 314 F. 2d 1 (9th Cir. 1962); Winchell Co., 51 T.C. 657 (1969). Further, we note that neither the partnership nor the corporation listed goodwill as an asset on their respective balance sheets and books, which omission, while not disproving the existence of goodwill, John Q. Shunk, supra, R. E. Baker, 37 B.T.A. 1135, 1149 (1938), does support our finding as to the absence of goodwill. John Winthrop Wolcott, 39 T.C. 538 (1962). Focusing on the character of the partnership business, we do not accord much significance to the fact of the partnership’s profitability; high earnings per se do not constitute goodwill. Estate of Leopold Kaffie, 44 B.T.A. 843 (1941); Donal A. Carty, 38 T.C. 46 (1962); Estate of Henry A. Maddock, supra; A. T. Miller, 39 T.C. 940 (1963), affd. 333 F. 2d 400 (8th Cir. 1963). More important is the question whether the business was such as to provide its purchaser with the expectancy of both continuing excess earning capacity and also of competitive advantage or continued patronage. Donal A. Carty, supra; Estate of Henry A. Maddock, supra; Charles W. Miller, supra; In re Brown, supra. Here, however, the partnership had no product line, trademarks, or patents to which goodwill might attach. Although the partnership enjoyed a favorable business reputation, the increasing competition in the contract-bidding procedure by which customers were acquired belies any competitve preference inhering in the business. Similarly, transferable goodwill would not exist as a function of the ability, experience, acquaintanceship, or other personal attributes of either Wilmot or William. D. K. MacDonald, supra; John Q. Shunk, 10 T.C. at 303-304; HowardB. Lawton, 6 T.C. 1093,1100 (1946). Wilmot, the seller, was not continuing in the business and William was, in effect, the buyer. Their dominating influence and overall importance to the success of the business further disproves the existence of transferable goodwill attributable to the business itself. Finally, a comparison of the sale price with the capitalized earning capacity of the business and with the value of the other assets purchased reveals no. excess value representative of goodwill. See George J. Staab, 20 T.C. 834 (1953), and Violet Newton, 12 T.C. 204 (1949), respectively. Not only, as demonstrated by expert testimony, does the capitalized value of the partnership’s business so closely approximate the sale price as to render goodwill, if any, negligible but also the fact that the appraised value of the machinery and equipment substantially exceeded book value indicates that the excess sale price reflects these assets, rather than goodwill or, as now urged by the corporation, deferred sales. On the basis of the foregoing, we, therefore, hold that no goodwill was sold by the decedent and Wilmot to the corporation and that none of the gain on the sale was attributable to deferred sales; instead, the gain resulting from the sale was attributable to the value of the depreciated machinery and equipment. Accordingly, it follows that the corporation used the proper basis in computing the depreciation claimed for fiscál 1968, 1969, and 1970 and that, pursuant to section 735(a)(1), the respective gain reported by decedent and Wilmot in respect of the sale is ordinary in character. Additionally, Wilmot realized an investment credit recapture as determined by respondent, and the corporation is not entitled to increase its cost of goods sold for fiscal 1968 to reflect an increase in value of deferred sales. Because of concessions, Decision will be entered under Rule 155 in docket No. 8657-73. Decisions will be entered for respondent in docket Nos. 8757- 73 and 8758- 73. We do not believe that the rule expressed in Commissioner v. Danielson, 378 F. 2d 771 (3d Cir. 1967), vacating and remanding 44 T.C. 549 (1965), cert. denied 389 U.S. 858 (1967), applies to preclude our inquiry. Here, not only are all parties to the transaction represented before the Court but, more importantly, petitioners do not seek to obviate specific allocation provisions in their written agreements as was the case in Danielson, but rather, in the absence of any such specificity, attempt to establish that their respective positions comport with their agreements. Cf. Copperhead Coal Co. v. Commissioner, 272 F. 2d 45 (6th Cir. 1959), affg. a Memorandum Opinion of this Court. As stated, the respective capital accounts of decedent and Wilmot were $124,836 and $186,377.15, which figures, by operation of sec. 732(b) and (c), equal the basis of the property distributed to them upon liquidation of the partnership. After addition of $550 to reflect a legal fee, the total excess amounted to $99,336.85. Under sec. 362(a), the corporation’s basis in the assets transferred by William was $12,346.73. Since we have characterized the transaction as a sale of partnership assets, respondent’s alternative reliance on sec. 751(a) is inappropriate, and sec. 735 instead applies to characterize the gain in issue. In pertinent part, sec. 735 provides: SEC. 735. CHARACTER OF GAIN OR LOSS ON DISPOSITION OF DISTRIBUTED PROPERTY. (a) Sale or Exchange of Certain Distributed Property— (1) Unrealized receivables — Gain or loss on the disposition by a distributee partner of unrealized receivables (as defined in section 751(c)) distributed by a partnership, shall be considered gain or loss from the sale or exchange of property other than a capital asset. Sec. 751(c) defines “unrealized receivables” to include sec. 1245 recapture gain. That is, the sale would constitute an early disposition within the meaning of sec. 47(a)(1). Respondent’s position as stakeholder does not, however, have any effect on the burden of proof which remains on the respective petitioners. Rule 142, Tax Court Rules of Practice and Procedure. See Freeport Transport, Inc., (S3 T.C. 107, 116-117 (1974) (concurring opinion by Dawson, C.J.), and the cases cited therein at pp. 116-117. Respondent has indicated that if dealing only with the corporation, respondent would have accepted the corporation’s income tax returns as filed as to the allocation of sale price to machinery and equipment. Although goodwill may attach to a particular name, Charles W. Miller, 56 T.C. 636 (1971), we believe that the provision for the right to use the Fleming name reflects personal rather than business motivation on the part of William.