REPUBLIC STEEL CORPORATION v.
UNITED STATES.

No. 44577.

Court of Claims.

Oct. 6, 1941.

for depreciation, but the defendant says that its proper basis is the cost to the per-

son from whom plaintiff's subsidiary acquired it, because after the reorganization an 80 per cent interest or control in the patents remained in the hands of the same persons. Whether or not an 80 per cent interest or control remained in the hands of the same persons is the first question presented.

The basis for determining depreciation of property acquired after February 28, 1913, is the cost of the property, except in those instances set out in section 113 of the Revenue Act of 1928, 45 Stat. 791, 819, 26 U.S.C.A. Int.Rev.Acts, page 382. The defendant alleges that the acquisition of these assets by the plaintiff comes within exception 7. This exception reads:

"(7) Transfers to Corporation Where Control of Property remains in same Persons.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. * * * *"

For some years prior to 1925 the plaintiff was the manufacturer of steel piping. In that year, or shortly prior thereto, a new process for its manufacture was discovered by plaintiff's competitors, by the use of which the cost of the manufacture thereof was greatly decreased and a superior article manufactured. In order to offset this competitive disadvantage the plaintiff sought to acquire certain patents of Steel and Tubes No. 1. In order to do so, it was necessary for plaintiff to acquire all the assets of this corporation. In order to bring this

Thomas F. Patton and Luther Day, of Cleveland, Ohio (Jones, Day, Cockley & Reavis, of Cleveland, Ohio, on the brief), for plaintiff.

S. E. Blackhain and Francis T. Donahoe, both of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, Sp. Assts. to Atty. Gen., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

The question in this case is the proper basis for depreciation of certain patents acquired by plaintiff's subsidiary through a reorganization from a corporation known in the record as Steel and Tubes No. 1. The plaintiff contends that the cost to its subsidiary is the proper basis

about plaintiff, under agreement with those in control of this corporation, agreed to organize a new corporation known in the record as Steel and Tubes No. 2. This new corporation had an authorized capital of 117,000 common shares, 72,000 Class A preferred, 45,000 Class B preferred and 117,000 Class C preferred shares. It was agreed that Steel and Tubes No. 1 should transfer to Steel and Tubes No. 2 all of its assets in consideration of the debentures of the new company of $4,500,000, all of its 72,000 shares of Class A preferred stock, and all of its 45,000 shares of Class B preferred stock, and 31,500 shares of the common stock of the plaintiff. In addition, the new corporation was to assume all the liabilities of Steel and Tubes No. 1, and was to deposit with it sufficient cash to enable it to redeem all of its outstanding 3,578 shares of preferred stock, and to enable it to discharge specified obligations of two of its subsidiaries. So long as the Class A and Class B preferred stock were outstanding, it was agreed that none of the Class C preferred stock should be issued, except upon the retirement of shares of the Class A and Class B preferred stock when an equal number of shares of the Class C preferred stock might be issued. It was agreed that plaintiff should furnish the new corporation the necessary cash and the required amount of its common stock to enable it to carry out the agreement. In consideration thereof the new corporation issued to plaintiff its entire common stock of 117,000 shares.

In addition, as part of the consideration for the assets of Steel and Tubes No. 1, the plaintiff agreed to purchase 11,799 shares of the total outstanding common stock of 101,799 shares of Steel and Tubes No. 1, and upon the consummation of the reorganization to surrender to it these shares for cancellation without further consideration.

The agreement was carried out according to its terms. After the reorganization had been completed the plaintiff had complete control of the new corporation and the stockholders of Steel and Tubes No. 1 had an interest in the corporation represented by 117,000 shares of Classes A and B preferred stock. Since the interest of the stockholders of Steel and Tubes No. 1 in the new corporation was less than 80 percent, and since they had no control over the new corporation, an 80 percent interest or control of the new corporation did not remain in the hands of the same persons, unless we treat the plaintiff as one who had an interest or control in the old corporation by reason of its ownership of the 11,799 shares, which by agreement it purchased and surrendered for cancellation. If by virtue of the ownership of these shares plaintiff can be considered as one of the persons who had an interest in or control of the old corporation, then an 80 percent interest or control in the new corporation did remain in the hands of the same persons.

However, plaintiff purchased and surrendered these 11,799 shares in the old corporation as a part of the consideration to the old corporation for a transfer of its assets to the new. It was a part of the purchase price. Its purchase of them and subsequent surrender of them was equivalent to its paying into the treasury of the old company the amount required to purchase them, as part consideration for the purchase of the old company's assets. Had this been done, it would hardly be contended that plaintiff had had an interest or control in the old company. These shares were purchased only as part of the consideration for the acquisition of the old company's assets. The plaintiff's interest in the old company was transitory only. It was acquired only as a step in bringing about the reorganization, as a result of which plaintiff acquired what it wanted, to wit, the old company's patents.

Under such circumstances, we are of the opinion that the statute does not require us to consider plaintiff as one who had an interest or control in the assets of the old corporation prior to the reorganization.

■■ The purpose of the statute was to prevent those interested in property from stepping up its basis by a change in the form of ownership, when there had been no change in fact. The underlying motive of this reorganization was not a continuance of ownership by the same persons in a different form, but was a change in ownership. The motive was plaintiff's desire to acquire these patents owned by a corporation in which it had previously had no interest. When the plaintiff set out to acquire these patents it had no interest or control whatsoever in the company that owned them. After the reorganization was completed it had complete control of the company that owned them, and a substantial interest in it. In order to acquire this control or interest it purchased for tem-

porary holding these 11,799 shares in the old company. Its acquisition of them was merely a means by which it ultimately acquired complete control of the desired patents. For this reason we think that it cannot be said that plaintiff was one of those who had an interest or control in the old company prior to the initiation of the reorganization. It is the situation at the beginning and end of the reorganization at which we must look. National Rubber Machinery Co. v. United States, 38 F.Supp. 260, 93 Ct.Cl. 340; Helvering v. Bashford, 302 U.S. 454, 58 S.Ct. 307, 82 L.Ed. 367; Commissioner of Internal Revenue v. Schumacher Wall Board Corp., 9 Cir., 93 F.2d 79; Commissioner v. Ashland Oil & Refining Co., 6 Cir., 99 F.2d 588; and Banner Machine Co. v. Routzahn, 6 Cir., 107 F.2d 147, certiorari denied, 309 U.S. 676, 60 S.Ct. 713, 84 L.Ed. 1021; Hazeltine Corp. v. Commissioner, 3 Cir., 89 F.2d 513; Heberlein Patent Corp. v. United States, 2 Cir., 105 F.2d 965; Bassick v. Commissioner, 2 Cir., 85 F.2d 8; West Texas Refining & D. Co. v. Commissioner, 10 Cir., 68 F.2d 77.

Plaintiff, therefore, is entitled to deduct depreciation upon the basis of the cost of these patents to its subsidiary.

The next question is the cost of the patents to plaintiff's subsidiary. When plaintiff approached Steel and Tubes No. 1 to buy its Johnston patents, it refused to sell them unless plaintiff would agree to purchase also its other assets, and for all its assets it demanded a price that would net its stockholders approximately $200 a share. It justified the price demanded by representing that its fixed assets were worth their book value and that its patents were worth something in excess of $12,000,000. The valuation of its patents it justified by the savings effected in the manufacture of small pipe and what could be effected by the use of the patents in the manufacture of large pipe. Plaintiff's representatives made careful investigations and various calculations and reached the conclusion that the patents it sought were in fact worth the price demanded. An agreement was accordingly reached to buy the entire assets of Steel and Tubes No. 1 at a price of $19,556,992.43. The tangible assets were carried on the books of Steel and Tubes No. 1 at $7,094,332.04, leaving $12,462,660.39 as the price to be paid for the patents. Apparently Steel and Tubes No. 1 did not consider that it had any good will separate and apart from its patents; in other words, if it disposed of its patents, it would not have any good will. Its president so testified, and it gave no value to it on its books. The plaintiff says it placed no value on it in determining whether or not to pay the price demanded.

But the defendant says the parties overvalued the patents, that they were not worth the sum at which the parties valued them, and it argues at length in support of this proposition. This may or may not be true; they may not have been worth what the parties thought they were. But the fact remains that they were purchased on the parties' valuation of them, and not on their actual value. The amount of $19,556,992.43 was paid for all the assets, the tangible assets were worth $7,091,332.04, leaving $12,462,660.39 as the price paid for the intangible assets. The only intangible assets regarded by the parties as of any value were the patents, so, it must follow that this sum was paid for the patents. It may be that the seller's good will really did have a value, but if the parties did not think so and, in computing the price to be paid, gave it no value, it must be eliminated from consideration in computing the amount paid for the other assets.

The plaintiff admits that Steel and Tubes No. 1 had two patents other than the Johnston patents which were worth $50,000. This leaves $12,412,660.39 as the cost to plaintiff's subsidiary of the Johnston patents, on which depreciation is to be computed.

The entry of judgment will be deferred until the filing of a stipulation by the parties, or, in the absence of a stipulation, until the incoming of a report by a commissioner as to the correct amount due plaintiff computed in accordance with this opinion. It is so ordered.